JOHN A. FOWLER, appellant,

*v.*

JACOB VREELAND, trustee, et al., respondents.

Two deeds for the same land were given the same day; one of the boundaries in one of them was defined as being "by the margin of the lake," and in the other, "by the courses of the lake." The lake was an artificial one, and, according to the strict rule of law, the deeds would carry the boundary to the middle of it. The grantee of the second deed, however, had, on the same day, agreed to buy the lake itself of the original grantor, but afterwards refused to carry out his contract, claiming that, under his deed (the second one above mentioned), he already owned the land to the middle of the lake.— *Held,* that the original grantor was entitled to a reformation of both deeds, so as to except all the lake therefrom.

On appeal from a decree advised by Vice-Chancellor Van Fleet, whose opinion is reported below.

This action was for the reformation of two deeds, one from complainant Jacob Vreeland, trustee, to the Equitable Land

Company, and the other from the land company to John A. Fowler. The bill alleges three contracts made September 7th, 1885, (1) between Jacob Vreeland and the land company for a tract of land east of Vreeland lake; (2) between the land company and John A. Fowler for that portion of the land next to the lake; (3) between Jacob Vreeland and John A. Fowler for the lake itself; that on September 14th, 1885, deeds were given in accordance with the first two contracts, the first bounding the tract on the west " by the margin of the lake," the second " by the courses of the lake"; that the grantors in each instance intended the deeds to contain an express exception of the lake, but by inadvertence the exceptions were left out; that the deeds do not convey any more than was intended, but defendant, John A. Fowler, has refused to complete his purchase under the third contract, and claims, under the deed from the land company, to own to the center of the lake; that such claim, though false, is a cloud upon complainants' title and would injure the marketable value of the lake in case said Fowler should fail to carry out his contract, wherefore they pray the court to decree that defendants own only the land precisely described in their deeds, and that the deeds be reformed by inserting the words, " excepting the said the Vreeland lake or pond."

John A. Fowler, the only defendant answering, denies that there was any mistake on his part, or that he ever heard of any express exception to be inserted in the deed to him, and alleges that the deed was in exact accordance with the contract, and that he is, and at all times has been, ready and willing to take the deed from complainant for the lake, but that after the signing of the contract he was notified that a party had a pipe in the lake, and claimed an easement in it which would destroy its value for his purposes, and that he notified complainants to remove the pipe and he would take the property, but complainants refused, and, though retaining the money paid on the contract for the lake, brought suit to correct a boundary as to which, had he fulfilled his contract, he would have had no interest.

On the hearing, complainants offered in evidence the contracts and deeds referred to in the bill, also a draft of a description

made by Mr. Pennington, to be inserted in the deed from Dr. Vreeland to the land company, to the admission of which defendant's counsel excepted. This is the only evidence as to any exception. A conversation as to the boundary was offered and admitted, although Mr. Fowler was not shown to have been present. Its admission was excepted to. As between Dr. Vreeland and the land company, the question as to boundary was in dispute at the time of making the contract.

It appeared from the testimony offered on behalf of complainants that the contract with Fowler for the lake was not carried out because there was a pipe which its owners claimed was an easement, and there were unpaid taxes which were liens on the premises. No evidence was offered as to any conversation with Mr. Fowler, or with any one on his behalf, as to the exception, or the exact boundary along the lake, nor as to any claim on his part to the ownership of the land to the centre of the lake.

On behalf of defendant, the testimony of Mr. Gaston was that the only conversation as to boundary was as to his proposition to pay a lump sum for the whole tract, and that the reason Mr. Fowler's contract had not been carried out was because of the incumbrances on the property, which Dr. Vreeland refused to remove. Mr. Fowler denied that there was any conversation in his presence as to the boundary of the lake.

VAN FLEET, V. C.

An examination of the authorities which must control the question in dispute in this case has led me to change my mind respecting the interpretation which the deeds must receive, which the complainants ask to have reformed. At first I thought their construction was free from doubt. They convey the land to the margin of the lake. Under language thus definite and lucid, my view originally was that it was not possible to misunderstand the intention of the parties; in other words, that it was not possible to construe the word margin or edge to mean middle. And this seems to be true, where the words of a grant carry the land granted to the margin, shore or waters of a natural pond or lake; but a different rule seems to prevail in

respect to the construction of grants bounding lands on a lake or pond created by artificial means, as by damming back the water of a natural stream and thus creating a pond or lake. The lake in question must be regarded as having been created by artificial means. The bill does not claim that it is a natural body of water. It simply says that it has existed for a very long time, while the answer explicitly avers that it is an artificial body of water created by expanding a stream by means of a dam.

The following is the rule of construction given by Angell: "Where land is conveyed bounding upon a lake or pond, if it is a natural pond the grant extends only to the water's edge, but if it is an artificial pond, like a mill-pond, caused by the flowing back of the water of a river, the grant extends to the middle of the stream in its natural state." *Angell on Waters* § *44*.

The same rule, slightly modified, was declared in *Waterman* v. *Johnson, 13 Pick. 261, 265.*

Chief-Justice Shaw there said: "Where an artificial pond is raised by a dam, swelling a stream over its banks, it would be natural to presume that a grant bounding upon such pond would extend to the thread of the stream upon which it is raised, unless the pond has been so long kept up as to become permanent and to have acquired another well-defined boundary."

The same rule prevails in other states. *Canal Commissioners* v. *People, 5 Wend. 423; State* v. *Gilmanton, 9 N. H. 461; Lowell* v. *Robinson, 16 Me. 359.*

The question as to what construction such grants shall receive is an undecided one in this state. While I think the more sensible and reasonable rule would be to hold that where the deed says that the land described in it shall be conveyed to the margin or edge of a body of water, that the parties did not intend to fix the boundary in the middle, still I cannot say that rule will be adopted. As the law now stands, the construction of the deeds under consideration is doubtful and uncertain. But there is no doubt about what the parties meant. The defendant had agreed to purchase the land covered by the lake before the land which he nows holds was agreed to be sold to his grantor. This his grantor knew when he made his contract for the

purchase of the land which the defendant now holds. It is certain their common grantor did not intend to sell the same lands to two different persons. The proof is conclusive that neither the defendant nor his grantor understood that the contract for the sale of the land, which the defendant now holds, embraced any part of the land covered by the water of the lake.

The case is one in which the court should, in the interest of peace, and for the security of title to the land, and to clear up doubt and remove obscurities, reform the deeds, so as to make them express clearly what the parties meant.

The complainants are entitled to a decree reforming the deeds, by excepting from the land covered thereby any land covered by the water of Vreeland lake, below the low-water line, when the water of the lake is in its ordinary state and condition.

The complainants are not entitled to costs; each party must pay their own.

*Mr. Isaac N. Miller,* for appellant.

*Mr. John S. Barkalow,* for respondent.

PER CURIAM.

The parties to the deeds in question clearly intended that the lands covered by the waters of Vreeland lake should be expressly excepted from the conveyances made by Vreeland, and that they should not be transferred by those conveyances.

The reformation should be made for the reasons stated by the Vice-Chancellor.

The decree will be affirmed.

*Decree unanimously affirmed.*